The next case for argument is United States v. Gonzalez-Godinez. Good morning. Ryan stood on behalf of appellant Mr. Gonzalez-Godinez. This court should reverse Mr. Gonzalez's conviction for two reasons. First, his posterous statement was admitted in violation of Miranda and in clear violation of this court's precedent in San Juan Cruz. Second, the court should reverse Mr. Gonzalez's conviction because his single equivocal admission of alienage failed to satisfy the government's obligation to present sufficient evidence to corroborate his guilt. Turning to the first issue, when two sets of rights are read to a defendant who is in custody before questioning and those rights differ or conflict, the government must clarify which set of rights applies moving forward and clarify any ambiguity that's been created through its decision to read conflicting rights. What would you like the government to have done in this case? The government needed to state that the administrative rights it read to Mr. Gonzalez no longer apply and that the Miranda rights that it had read to him did. But that might have deprived him of an opportunity to apply timely for asylum. Here what the government did in this case is it sought to combine the immigration interview and the post-arrest interrogation into one. Those are two separate interviews and when it reads these conflicting rights to a defendant like Mr. Gonzalez who is in custody in an inherently stressful situation at the same time, then it's not able to comply with Miranda unless it clarifies this ambiguity. They should have conducted two separate interviews. Typically that's the way it would be done. They would advise Mr. Gonzalez, for example, of his administrative rights, ask him questions relevant to the administrative proceeding before they Mirandized him. It can be done in either direction. Can they use the statements that he gives them in that interview against him in a criminal case? If he says, yes, I'm from Mexico and I don't have papers, I'd like to apply for political asylum. I'd like to clarify the court's question before I answer it. The court, I believe, is asking whether after reading Mr. Gonzalez, his administrative rights, if he gave responsive answers to those questions, whether that could then be admitted against him in the criminal proceeding. Is that the court's question? The answer would be no unless the government can comply with Miranda. Miranda obviously applied. There's sort of no way for the government to get there, is there? Oh, I disagree. And I think that there's a clear road map for the government to get there and San Juan Cruz provides that. Okay, so tell me what the road map is. The government needs to advise a defendant of their Miranda rights before questioning an in-custody defendant in a criminal proceeding. That is a clear bedrock principle of our criminal law. And the government has the obligation to do that. There is no clear script of what those rights are, although Miranda tells us exactly what the core fundamental principles are that must be clearly and unequivocally conveyed to the defendant before questioning. Those rights, as they relate to Mr. Gonzalez's case, would be the right to have a court-appointed attorney or an attorney that he would not need to pay for, and similarly that he has no obligation to make a statement. He has the right to remain silent. Those are the two principal rights that conflict with administrative rights under immigration law. In order for Mr. Gonzalez's post-arrest statement to be admissible in a criminal proceeding, the government must clearly advise him of those principles under Miranda. It could choose to conduct, for example, an administrative interview before the Miranda interview, advising him, for example, of his administrative rights, taking questions. That's just where we were. Then they're asking him whether he's from Mexico, a fact which may be used against him before they've given Miranda. I thought you just told me they had to give Miranda first. I'm really confused. Let me clarify. In order for the government to use Mr. Gonzalez's answers to their questions in a criminal proceeding, they must comply with Miranda. The order that they choose to do the questioning in I don't believe is relevant. If they do the questioning first for the immigration proceeding, they cannot use those questions in the criminal proceeding until they have complied with Miranda.  They could then use those statements in the criminal proceeding and follow up with the administrative interview. And what happened here? Which order did they give them here? It's unclear. The agent testified that both rights were read simultaneously, that he was not sure in which order, but that both were read before questioning. So here there was a conflicting set of rights. Mr. Gonzalez was told on the one hand he had the right to remain silent, on the other hand that that interview would be his only opportunity to seek asylum, which he did seek. Those rights are clearly in conflict. The government presented no evidence that Mr. Gonzalez was. I'm not sure I understand that there's a conflict here in the way that it was in San Juan. San Juan did seem to be inconsistent, inconsistent advice, because one said you're going to have to pay for an attorney, and the other one said you don't have to pay for an attorney. What they've said here is, look, if you choose to talk to us, you should understand it can be used against you. You don't want to talk to us, you don't have to. An attorney will be appointed for you. This is also an opportunity, however, if you think you've got an asylum claim, would probably be a defense to your criminal action. And this would be a good time to tell us that you have a fear of persecution if you're returned home to your own country. I don't see that those are in conflict. There are advantages and disadvantages to doing that, and that's true. There's some tension there, but I don't see that they're in conflict. I don't see that he's been given inconsistent advice. Your Honor, I respectfully disagree. First, the distinction that the court seeks to draw from San Juan Cruz is present here as well. The record shows that Mr. Gonzalez was advised of his administrative rights, which, as the court highlighted from the opinion in San Juan Cruz, include the right to have an attorney present but not an attorney free of charge, which is clearly distinct from the rights guaranteed under Miranda. That was present in this case. In addition to that conflict, we see the agent telling Mr. Gonzalez that, on the one hand, he has the right to remain silent. On the other hand, if he wishes to seek asylum, he needs to use this interview as his opportunity to do so because he may not have another opportunity to speak with an immigration official. I think it is a clear conflict to tell a detainee that, on the one hand, they have no obligation to make a statement and that any statement they can make could be used against them in a criminal proceeding, while also telling them that if they fear persecution for torture or harm if deported to another country, that this is their only opportunity to make a statement in support of seeking that claim. I think that that goes far beyond tension, as the court indicated. It's a clear conflict. Turning to my second issue that's presented before the court and the second reason why this court should reverse Mr. Gonzalez's conviction, there was insufficient corroborating evidence of his single admissible statement of alienage presented at trial. This court has never upheld a conviction under the corpus delicti doctrine where only manner of entry, rather, evidence was presented to corroborate a single admission of alienage. But did he admit to Agent Hewitt before, so there aren't actually two? There's one admissible statement of alienage. He admitted to Agent Hewitt at Cage. He admitted to Agent Hewitt in the field that he was a citizen of Mexico without documents to enter the United States. He did not admit that he was not a United States citizen. While I think it's strong evidence that he was not a United States citizen, it's not clear, certainly his second statement offered to Agent Heron was far more clear and compelling from the government's perspective that that statement was not admissible. But we're not considering Agent Hewitt's, with respect to your point, we're not considering Agent Hewitt's testimony for his guilt, but we're just looking for corroboration in terms of corroboration of his confession. It seems to corroborate if he told Agent Hewitt, you know, I'm a Mexican citizen, I don't have lawful documentation here. It seems to, that's the whole point of corpus delicti is to make sure it was a coerced confession. But if you have evidence that he admitted it before to the first agent, that seems to be sufficient corroboration. Agent Hewitt is the first agent. And so his statement to Agent Hewitt was that he was a Mexican citizen without documents to come into the United States. The court under the corpus delicti doctrine looks to what corroborating evidence the government, admissible corroborating evidence the government presented. And here the level of proof in corroboration is sparse. Agent Hewitt testified that he saw marks on the ground that indicated to him that someone had crawled in that area and found Mr. Gonzalez hiding in a bush. When asked to identify Mr. Gonzalez, he was unable to do so. And I think that if the court looks at the totality of Agent Hewitt's testimony, it's spotty. He wasn't able to identify the defendant. He remembered little about the interaction. The level of proof and corroboration is far distinct than the government's principal case, Garcia-Villegas, that they look to analogize Mr. Gonzalez's case to. If the agent decided to give Miranda warnings first and then your client said, okay, I get it. I don't want to talk to you people anymore. No more questions. Right. What are the agent's options or requirements at that point? The agent could advise Mr. Gonzalez that he understands Mr. Gonzalez's decision. He also has additional rights under immigration law. I don't want to talk to you until I see my lawyer. He certainly has the right to do that. And then the agent could advise Mr. Gonzalez that he has additional rights under immigration law and that they would interview him at a different time with respect to that, either doing it subsequent and agreeing that those statements could not be admitted against him in the criminal proceeding and could only be used for their intended purpose in the immigration proceeding, or it could choose to do that when he returns to immigration custody following the criminal prosecution. It would be the government's option. But what the court in San Juan Cruz is very clear about is that when conflicting statements of rights are read, that the government has an obligation to clarify which rights apply to the answers given to the questions. And here, going back to Judge Bahavi's point, isn't this just, can't you characterize this as, there are two tough choices. You have one path or the other, and it may come at a cost to the other path, but so be it. It's kind of like the criminal investigation civil case, and the civil case may have adverse consequences than the civil case, but those are tough choices you just have to make, criminal law versus immigration law. No, Your Honor, I don't agree. I think that this court's precedent under Miranda and its progeny are clear that the waiver must be knowing and voluntary. And if someone is advised that, on the one hand, they have the right to remain silent, consistent with Miranda, but on the other hand, under a different set of rights, like the administrative rights at issue here, that they must make a statement. For example? If he was, could he be charged criminally if he's got a pending asylum application? Certainly. And would the asylum application, the merits of the asylum application, have any bearing on his criminal case? No, I don't believe so. I mean, charging a detainee, like someone in Mr. Gonzales' position, with a criminal illegal entry, as occurred here, while there's a pending asylum petition, is somewhat commonplace. And Mr. Gonzales' case is an example of that. There is factual overlap, perhaps, if the— I mean, if he's entitled to come into the country because he fears, he has a well-founded fear of persecution if he returns to his country, that he hasn't entered the United States illegally. That would be a defense in the criminal charge. But the standard would be different. I mean, the standard would be that he hadn't entered, perhaps, free of official restraint. His intention was to enter and be arrested. And while there may be factual overlap between his intent to not be free of official restraint and his subsequent asylum claim, the criminal proceeding would not turn on whether he would be able to satisfy all of the factors related to his asylum claim. Again, while there may be some factual overlap and it may provide a defense to the criminal charges, they're different proceedings. There's a different standard. And the rulings, I think, could be different. I appreciate the Court's generosity with my time. You have an extra minute for a moment. Thank you. Good morning, Your Honors, and may it please the Court. Jacqueline Stahl for the United States. Here, the Miranda warnings were clear and given in a clear manner and not inconsistent. Agent Herron testified that he told Gonzalez, you have the right to remain silent and you have the right to an attorney. There's nothing in the record saying he was then given some advisal that you have the right to an attorney, that you have to pay for it yourself. That is not an issue in this case. The sole issue is the right to remain silent. Here, he was told he had that right. He agreed that he understood verbally, and then he agreed in writing, and he agreed to waive that in writing. Your Honors are exactly right. He may have had a difficult decision whether to invoke that right to remain silent or to speak due to the immigration case. But if we look at almost every 1326 case cited by my colleague in the corpus delicti realm, this Court has routinely allowed sworn statements from immigration proceedings to be used in criminal proceedings. So while it's a difficult decision, that is different than this Court's holding in San Juan Cruz, where the defendant was told you have the right to an attorney but at your own cost, and then we're in criminal land now, you have a right to an appointed attorney. This Court's opinion focused solely on that right, the right to an attorney, and therefore it is not implicated in this case where he was told he had the right to remain silent. Instead, he decided to speak anyways. Further, any error would be harmless beyond a reasonable doubt because of the evidence here. Agent Hewitt testified that he saw two individuals crawling near the international border, that when he got close he saw one individual crouching, hiding behind some brush. He saw another individual on his hands and feet sliding down a steep gully. He asked both of them about their citizenship, and they said, we are Mexican citizens with no documents allowing us to legally be here. It was 30 yards from the border where a part of the fence had been removed. It was a desolate area four miles from the nearest port of entry, and therefore there was any error in allowing them Miranda's, post-Miranda statement is harmless beyond a reasonable doubt. And further, under corpus delicti, looking at the facts in the light most favorable to the government, this Court looks at whether any rational fact finder could find the elements beyond a reasonable doubt. Here, for the reasons just stated, those facts could be found. And in fact, two rational fact finders, first the magistrate judge and the district court, found proof beyond a reasonable doubt. Unless the Court has any questions, the United States respectfully requests this Court affirm. Can you address your opposing counsel's argument that waiver has to be intelligent and knowing here? And it is confusing, you know, when someone says you have the right to remain silent, and we don't know exactly what time, you know, if there's a break between if it says you have the right to remain silent, and then later says if you want to speak, you better speak now. That could be confusing. Your Honor, the record here is that he was clearly told you have the right to remain silent, and then he was told I am an immigration officer, I can take your sworn statement, we do offer protection from persecution, now is your chance to speak to me about your immigration case. This comes up routinely in the motion to suppress context when there is an issue about Miranda in immigration advisals, where this Court has found, for example, if you start with the immigration interview, and then you receive many damning statements, and then you Miranda-ize, this Court has found that that would be subject to suppression, because the Miranda rights were not given before damning evidence was provided. However, this Court routinely has allowed immigration statements, as long as they were made post-Miranda, to come in in criminal proceedings. That happens routinely. In almost every 1326, the record of sworn statement, which was given for immigration purposes, either in a prior deportation or an asylum proceeding, are used against that defendant in the criminal proceeding. So the issue is whether Miranda was clearly given, which here it was, the magistrate judge made the finding that it was voluntarily and freely given, the agent testified, he understood, he stated he understood, he signed a written waiver that he understood, and he never indicated he was confused or that he didn't want to speak. Unless the Court has further questions. Thank you very much. Thank you. Thank you, Your Honors. I'd like to begin by responding to Ms. Stahl's point that it's routine in a 1326 prosecution for immigration statements to be admitted against the defendant. I agree, and I think that cuts heavily against the government because it shows it is able to comply with San Juan Cruz's requirement that it clarify which set of rights apply before a criminal statement could be admitted against a criminal defendant. The government's ability to comply with San Juan Cruz and the difference between the immigration and Miranda rights, again, it cuts heavily against the government because it shows it knows how to follow this rule, and it clearly did not. In this case, advising a defendant who's in custody, that on the one hand, he has the right to remain silent, but on the other hand, if he fears torture or persecution, he must make a statement, that is not putting a defendant in a position where he is able to make a free, voluntary, and knowing choice. Is the government under any obligation to give the two warnings in any particular order? No. They must clarify that the administrative rights no longer apply if they choose to do the administrative rights first because the Miranda rights, they're more onerous for the government. The government must provide an attorney free of charge. The defendant doesn't have the right to make a statement. For example, if it reads the immigration rights first and takes an immigration statement, it then may turn to Miranda, and whatever statements the defendant makes after a knowing and voluntary waiver of his Miranda rights would be admissible in a criminal proceeding. Yeah, but if the defendant says, look, in response to the Miranda rights, this deal is over. I don't want to talk to you anymore. I want a lawyer. Yes. Am I correct that the government, the agents at that point, would not have the option of giving him the administrative rights? I don't necessarily agree with that. I think that the government at that point has two choices. It could proceed and offer administrative rights. It could continue to talk to him after he invoked his Miranda rights and say, I don't want to talk to you anymore without a lawyer. Those admissions would not be admissible in a criminal proceeding. Alternatively, the government, since it's advising the defendant of his Miranda rights, has made a choice to pursue criminal prosecution, an individual or a person like Mr. Gonzalez will then be taken back into immigration custody following the criminal prosecution, and it could choose to interview him in custody, as, for example, happened in the Hernandez case, which is the principal case that we cite under the corpus electe doctrine. That was a part of a jail sweep, and an immigration officer interviewed Mr. Hernandez in custody already in jail. That is a commonplace scenario where immigration officers would then interview a defendant, advise him of his administrative rights, and whatever statement he would make would go to the criminal prosecution or the immigration proceedings rather, not the criminal prosecution. If the court has no further questions, I appreciate the after time. Thank you. Thank you both for the helpful argument. The case has been submitted.
judges: Parker, BYBEE, LEE